UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MATSON NAVIGATION COMPANY, INC.,

    *Plaintiff*,

  v.

U.S. DEPARTMENT TRANSPORTATION, *et al.*,

    *Defendants*.

Civil Action No. 21-1606 (RDM)

## MEMORANDUM OPINION

Plaintiff Matson Navigation Company, Inc. ("Matson") seeks review of Defendant Maritime Administration's ("MARAD") decision approving the replacement of a vessel operating under the Maritime Security Program—the APL Guam—with another vessel—the Herodote—owned by Intervenor-Defendant APL Maritime, Ltd. ("APL"). Dkt. 1. (Compl.). Matson contends that MARAD's approval order violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), because it is arbitrary, capricious, and not in accordance with law. Dkt. 1 at 33, 34 (Compl. ¶¶ 184, 197). Defendants have moved to dismiss Matson's complaint on the ground that MARAD's invocation of 46 U.S.C. § 50501 as a partial basis for its order vested exclusive jurisdiction to review that order in the court of appeals. Dkt. 15-1 at 1; Dkt. 17 at 1–2. Because this case presents the same jurisdictional issues that the Court resolved in its prior decision in *Matson Navigation Co. v. United States Department of Transportation*,

1

466 F. Supp. 3d 177 (D.D.C. 2020) ("*Matson II*"), the Court will **GRANT** Defendants' motions and **DISMISS** the case for lack of jurisdiction.

## I. BACKGROUND

### A. Statutory Background

In the Maritime Security Act of 1996, Pub. L. No. 104-239, 110 Stat. 3118, Congress provided for the establishment by "[t]he Secretary of Transportation, in consultation with the Secretary of Defense" of "a fleet of active, commercially viable, militarily useful, privately owned vessels to meet national defense and other security requirements and maintain a United States presence in international commercial shipping." 46 U.S.C. § 53102(a). This Maritime Security Fleet "consist[s] of privately owned, United States-documented vessels for which there are in effect operating agreements." *Id.* Pursuant to this authority, the Secretary established the Maritime Security Program ("MSP"), *see* 46 U.S.C. §§ 53101–53111, and delegated its administration to the Maritime Administrator, who heads MARAD, *see* 49 C.F.R. § 1.93(a). For a vessel to participate in the MSP, it must meet several eligibility requirements that advance the purposes of the MSP, including requirements concerning the vessel's ownership and documentation, its commercial viability, its suitability for national defense or military purposes, and its operation in foreign commerce. *See* 46 U.S.C. § 53102(b). Contractors must enter into "operating agreements" with MARAD that cover vessels subject to the Program. *See id.* § 55103; 46 C.F.R. § 296.2 (defining "MSP [o]perating [a]greement" as "the assistance agreement between a Contractor and MARAD that provides for MSP payments"). Operating agreements are "effective only for 1 fiscal year" but are "renewable." 46 U.S.C. § 53104(a). The Secretary makes fixed payments to the contractors under the operating agreements. *See* 46

2

U.S.C. § 53106(a)(1)(A) (setting the annual payment for each vessel for fiscal years 2018, 2019, and 2020 at $5,000,000).

The statute also provides a mechanism for replacing vessels subject to MSP agreements with new vessels. Under 46 U.S.C. § 53105(f), "[a] contractor may replace a vessel under an operating agreement with another vessel that is eligible to be included in the Fleet under section 53102(b), if the Secretary, in conjunction with the Secretary of Defense, approves the replacement of the vessel." Section 53102(b), as discussed, sets forth numerous requirements for vessels to be eligible to join the MSP. This case chiefly concerns one such requirement: that a "vessel meets the requirements of paragraph (1), (2), (3), or (4) of [§ 53102(c)]." *Id.* § 53102(b)(1). Section 53102(c) outlines certain requirements related to the ownership or operation of MSP vessels. As relevant here, paragraphs (1), (2), and (4) of § 53102(c) require, as one of the conditions of their fulfillment, that a vessel be owned by, operated by, or chartered to "a person that is a citizen of the United States under section 50501." *Id.* § 53102(c)(1), (2)(A)(i), (4)(B). Section 50501, in turn, provides that "a corporation, partnership, or association is deemed to be a citizen of the United States only if the controlling interest is owned by citizens of the United States," with the caveat that, "if the corporation, partnership, or association is operating a vessel in the coastwise trade, at least 75 percent of the interest must be owned by citizens of the United States." *Id.* § 50501(a).

**B.     Factual Background**

In January 2005, the Secretary of Transportation entered into nine agreements with APL, permitting nine APL vessels to operate as part of the MSP. *See Matson II*, 466 F. Supp. 3d at 183. In December 2014, APL applied to MARAD for authorization to replace two of those vessels. *Id.* On October 22, 2015, MARAD approved APL's application to replace the APL

3

Cyprine with the APL Guam in the MSP fleet (the "2015 Approval Order"). Dkt. 1 at 14 (Compl. ¶ 71). In December 2016, MARAD approved APL's application to replace the APL Agate with the APL Saipan (the "2016 Approval Order"). *Id.* at 15–16 (Compl. ¶¶ 80–83).

Plaintiff Matson provides ocean freight carrier services in the Pacific region and serves several of the same routes as APL. *Id.* at 5, 6 (Compl. ¶ 23, 26). Shortly after MARAD's approval of the replacement vessels, Matson filed an administrative protest with MARAD in which it challenged the vessels' eligibility for the MSP. *Matson Navigation Co., Inc. v. U.S. Dep't of Transp.*, 895 F.3d 799, 802–03 (D.C. Cir. 2018) ("*Matson I*"). MARAD rejected Matson's appeal, concluding that APL's vessels met the relevant statutory criteria. *Id.* at 803. On June 2, 2017, Matson sought review of MARAD's approvals in the D.C. Circuit. *Id.* Following briefing and oral argument, the D.C. Circuit dismissed Matson's petition for lack of jurisdiction. *Id.* at 806. With respect to Matson's challenge to MARAD's 2015 Approval Order, the court of appeals held that it lacked jurisdiction because Matson failed to file a timely petition for review. *Id.* at 804–05. And with respect to the 2016 Approval Order, the D.C. Circuit held that it lacked jurisdiction because MARAD's order "did not make an explicit finding" or the "functional equivalent" of an explicit finding "that the entities involved were U.S. citizens within the meaning of [46 U.S.C. §] 50501," and thus the order was not made "pursuant to" § 50501—a criterion that the court deemed necessary for it to exercise jurisdiction over Matson's challenge under the Administrative Orders Review Act (also known as the "Hobbs Act"), 28 U.S.C. § 2342(3)(A). *Id.* at 805–06.

Following the D.C. Circuit's dismissal, Matson challenged the approval orders in this Court. *See Matson II*, 466 F. Supp. 3d at 185. APL intervened, and the parties cross-moved for summary judgment. *Id.* at 180. MARAD also moved to dismiss Matson's challenge to the 2015

4

Approval Order, arguing that because that order was made, in part, "pursuant to" 46 U.S.C. § 50501, the Hobbs Act vested the courts of appeals with exclusive jurisdiction to review it. *Id.* at 180–81.

This Court agreed with MARAD and granted MARAD's motion to dismiss with respect to Matson's challenge to the 2015 Approval Order. *Id.* at 181. The Court concluded that because the 2015 Approval Order made "explicit reference" to § 50501, the order was made "pursuant to" that section and thus triggered the court of appeals' Hobbs Act jurisdiction over the entire order. *Id.* at 188–89. The Court then considered "whether the district courts have concurrent jurisdiction to review those portions of a multiple-authority agency order that turn on statutory provisions not listed in the Hobbs Act," *id.* at 190, and determined that the answer was no, *id.* at 192. The Court observed that although the "D.C. Circuit has not expressly answered the question, . . . [s]everal D.C. Circuit decisions[,] . . . along with out-of-circuit precedents, support the conclusion that the courts of appeals have exclusive jurisdiction to review multiple-authority orders." *Id.* at 190; *see also id.* at 190–91 (collecting cases). Applying the test articulated by the Second Circuit in *Sutton v. United States Department of Transportation*, 38 F.3d 621 (2d Cir. 1994), the Court concluded that, "[b]ecause MARAD's citizenship determination under § 50501 was 'a necessary predicate to' the challenged determination that the APL Guam was eligible to participate in the MSP as a replacement vessel, the courts of appeals have exclusive jurisdiction to review the entire determination." *Matson II*, 466 F. Supp. 3d at 191 (quoting *Sutton*, 38 F.3d at 625). The Court also found instructive the plain text of the Hobbs Act itself, which "grants the courts of appeals exclusive jurisdiction over the entirety of 'final orders' and not merely those portions of final orders that implicate § 50501." *Id.* (quoting 28 U.S.C. § 2342(3)(A)) (internal quotation marks omitted). Based on these considerations, the

Court held that "it lack[ed] jurisdiction to consider Matson's challenge to MARAD's 2015 Approval Order authorizing the substitution of the APL Guam for the existing MSP vessel." *Id.* at 192.

Fast forward seven months. On January 12, 2021, APL applied to replace the APL Guam with a different vessel—the Herodote—as part of the MSP fleet. Dkt. 1 at 20 (Compl. ¶ 112). MARAD found that the Herodote met the MSP requirements under 46 U.S.C. § 53102(b) and 46 C.F.R. § 296.11 and approved APL's application on April 26, 2021 (the "2021 Approval Order"). *Id.* at 20-23 (Compl. ¶¶ 114–21); *see also* Dkt. 1-25. Among other things, that order expressly found that "the Herodote will be owned by . . . a Delaware corporation and United States citizen corporation within the meaning of 46 U.S.C. § 50501." Dkt. 1-25 at 1.

MARAD approved APL's request to substitute the APL Guam with the Herodote 14 days before oral argument was set to take place in the D.C. Circuit on Matson's appeal of *Matson II*. *Id* at 24 (Compl. ¶ 125). As a result, the D.C. Circuit dismissed Matson's appeal as moot and vacated the portion of *Matson II* that concerned the district court's subject matter jurisdiction over the 2015 Approval Order. *Matson Navigation Co., Inc. v. U.S. Dep't of Transp.*, No. 20-5219, 2021 WL 3140374, at *1 (D.C. Cir. July 15, 2021) (per curiam).

**C.      Procedural Background**

On June 14, 2022, Matson initiated this action to challenge MARAD's 2021 approval of the Herodote, naming the Department of Transportation and MARAD ("MARAD") as defendants. Dkt. 1. (Compl.). Eleven days later, APL filed an unopposed motion to intervene as a defendant, Dkt. 7, which the Court granted, Min. Order (June 30, 2021). In its complaint, Matson alleges that MARAD's approval of the Herodote was arbitrary, capricious, and otherwise contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A). Dkt. 1 at 33, 34 (Compl. ¶¶ 184,

197).  Specifically, Matson alleges that (1) the Herodote is ineligible for MSP subsidies because "it will operate in impermissible domestic commerce in violation of" various statutory and regulatory requirements for MSP participation, Dkt. 1 at 30 (Compl. ¶ 164); and (2) the Herodote will "engage in impermissible domestic trade in violation of 46 U.S.C. § 53105(a)(2)," *id.* at 33 (Compl. ¶ 187).  As a result, Matson asks the Court to declare the 2021 approval of the Herodote unlawful and to vacate and set aside MARAD's order.  *Id.* at 34.

MARAD and APL filed separate motions to dismiss Matson's claims on August 30, 2021.  *See* Dkt. 15; Dkt. 17.  Both motions contend that the 2021 Approval Order is virtually indistinguishable from the 2015 approval of the APL Guam, over which this Court concluded that it lacked subject matter jurisdiction.  *See* Dkt. 15-1 at 9; Dkt. 17 at 6.  Matson opposed on September 13, 2021, Dkt. 18, and Defendants filed their replies on September 27, 2021, Dkt. 20; Dkt. 21.

## II. ANALYSIS

Defendants move to dismiss for lack of subject matter jurisdiction.  They argue that the 2021 Approval Order was issued, at least in part, pursuant to 46 U.S.C. § 50501, and, consequently, the Hobbs Act vests exclusive jurisdiction to review that order in the courts of appeals.  *See* Dkt. 15-1 at 14–30; Dkt. 17 at 5–7.  Matson opposes Defendants' motions to dismiss on essentially the same grounds that it opposed dismissal in *Matson II*.  It insists that because § 50501 does not *authorize* MARAD to issue orders that approve replacement vessels, the 2021 Approval Order could not have been issued "pursuant to" § 50501, and, thus, the Hobbs Act jurisdictional provision does not apply.  Dkt. 18 at 21.  Upon consideration of the parties' submissions in this case, the Court sees no reason to depart from its analysis in *Matson II*.  As a result and because for jurisdictional purposes the 2021 Approval Order is indistinguishable from

7

the 2015 Approval Order, the Court concludes that the 2021 Approval Order was issued "pursuant to" § 50501, and thus the Hobbs Act vests exclusive jurisdiction to review it with the courts of appeals. The Court, accordingly, will grant Defendants' motions to dismiss for lack of jurisdiction.

"[U]nless a statute provides otherwise, [parties] seeking review of agency action go first to district court rather than to a court of appeals." *Int'l Bhd. of Teamsters v. Peña*, 17 F.3d 1478, 1481 (D.C. Cir. 1994) ("*IBT*"). The Hobbs Act, however, vests the courts of appeals with

> exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all rules, regulations, or final orders of . . . the Secretary of Transportation issued *pursuant to section 50501*, 50502, 56101–56104, or 57109 of title 46 or pursuant to part B or C of subtitle IV, subchapter III of chapter 313, or chapter 315 of title 49.

28 U.S.C. § 2342(3)(A) (emphasis added). In *Matson II*, this Court concluded that the 2015 approval of the APL Guam "was, in fact, subject to the Hobbs Act." *Matson II*, 466 F. Supp. 3d at 188. That reasoning extends to the 2021 approval of the Herodote.

In *Matson I*, the court of appeals held that it lacked Hobbs Act jurisdiction to review the 2016 Approval Order because "MARAD never explicitly invoked section 50501 in reaching its eligibility determination in 2016." *Matson I*, 895 F.3d at 805. In doing so, however, the court took care to "contrast" the 2016 and 2015 Approval Orders. *Id.* Unlike the 2016 Approval Order, the court observed, the 2015 Approval Order expressly relied on § 50501. *Id.* at 804–05. For this reason, the D.C. Circuit did not premise its decision declining to review the 2015 Approval Order on the same rationale that it had applied to the 2016 Approval Order. Instead, it observed that "MARAD's 'explicit reliance' on section 50501 [in the 2015 Approval Order] could provide [the] court with jurisdiction under the Hobbs Act over the 2015 approval." *Id.* at 804 (quoting *IBT*, 17 F.3d at 1482). And although the court of appeals declined conclusively to

8

decide the issue because it lacked jurisdiction for other reasons (*i.e.*, Matson's appeal was untimely), *id.* at 804–05, the court's reasoning nevertheless strongly implied that jurisdiction would otherwise have been proper under the Hobbs Act due to the 2015 Approval Order's "explicit reference" to § 50501, *id.* at 805–06.  Relying in part on the D.C. Circuit's analysis, this Court concluded in *Matson II* that, because the 2015 Approval Order "explicit[ly] reference[d]" § 50501, it was issued "pursuant to" that section, and thus the Hobbs Act vested jurisdiction to review the 2015 Approval Order in the courts of appeals.  *Matson II*, 466 F. Supp. 3d at 188–89.

As relevant here, the 2021 Approval Order of the Herodote—like the 2015 Approval Order—makes "explicit reference" to § 50501.  The 2021 Approval Order expressly states that "the Herodote will be owned by . . . a Delaware corporation and United States citizen corporation within the meaning of 46 U.S.C. § 50501."  Dkt. 1-25 at 1.  Similarly, the 2015 Approval Order stated that "the vessel was owned by a citizen of the United States 'within the meaning of 46 U.S.C. § 50501.'"  *Matson I*, 895 F.3d at 804 (quoting Dkt. 1-7 at 4).[1]  Under the Court's reasoning in *Matson II*, the 2021 Approval Order's explicit reference to § 50501 "is enough to trigger Hobbs Act jurisdiction over the entire order."  *Matson II*, 466 F. Supp. 3d at 189.

In its opposition, Matson largely recycles the same arguments that the Court considered and rejected in *Matson II*.  *Compare id.* at 188–90, *with* Dkt. 18 at 21–30.  Upon re-examination, the Court remains unpersuaded by those arguments.  To the extent that Matson raises new arguments, however, those also fail.  First, Matson contends that the definition of "pursuant to" that the Court employed in *Matson II*—*i.e.*, "in conformity with" or "according to," *see* 466 F.

---

[1] For convenience, the 2015 Approval Order quoted by the D.C. Circuit is cited with reference to the docket and documents in this case.

Supp. 3d at 189–90—conflicts with the definition that the Supreme Court adopted in *National Association of Manufacturers v. Department of Defense*, 138 S. Ct. 617 (2018) ("*NAM*"): "by reason of the authority of," "direct[ed] [by]," or "authorize[d] [by]." Dkt. 18 at 22 (quoting *NAM*, 138 S. Ct. at 630).

The Court's opinion in *Matson II* explains why this argument has little force. First, as a technical matter, the Supreme Court's decision in *NAM* did not define "pursuant to;" rather, *NAM* concerned a requirement that certain agency action be taken "under" a particular statute, and in the course of defining the word "under," the Supreme Court explained that the word "under," among other things, meant "pursuant to." 138 S. Ct. at 630. The Court began its analysis, however, with a caveat: it explained that "the word 'under' is a 'chameleon' that 'must draw its meaning from its context.'" *Id.* (quoting *Kucana v. Holder*, 558 U.S. 233, 245 (2010)). Thus, the Court merely concluded that, in the context of the specific statute under consideration in *NAM*, the word "under" meant "pursuant to" or "by reason of the authority of." *Id.*

Taking its cue from *NAM*, this Court employed a similarly context-dependent analysis in *Matson II*. There, the Court considered the nature of the term "pursuant to" and concluded that "the term 'pursuant to' is also a 'chameleon' that 'must draw its meaning from its context.'" *Matson II*, 466 F. Supp. 3d at 189 (quoting *NAM*, 138 S. Ct. at 630). The Court then explained:

> The Hobbs Act provides for exclusive appellate jurisdiction in cases challenging agency decisions made "pursuant to [§] 50501." 28 U.S.C. § 2342(3)(A). To give that statutory text meaning, as the Court must, *see Mac's Shell Serv., Inc. v. Shell Oil Prods. Co.*, 559 U.S. 175, 188 (2010), there must exist *some* agency decisions that are made "pursuant to" § 50501, which—as Matson observes—merely sets forth the requirements for being "deemed to be" a "citizen of the United States" for purposes of the merchant marines. 46 U.S.C. § 50501. As a result, the Hobbs Act's reference to rules or orders issued "pursuant to § 50501" can have meaning only if agency action taken "pursuant to § 50501" includes rules or orders that do not "direct," "authorize," or "approve[]" some action that is compelled or authorized by § 50501 itself.

10

*Id.* (alterations in original). Thus, the fact that the Supreme Court—in the context of a different statute and while interpreting a different word—associated the phrase "pursuant to" with the words "direct," "authorize," and "by reason of the authority of" is of little consequence. Here, moreover, MARAD's determination that the vessel was owned by a U.S. citizen within the meaning of § 50501 was as essential to the agency's approval of the substitution as any other finding contained in the order. Under § 53102, a vessel is eligible to participate in the MSP only if it is owned and operated by a U.S. citizen, it is owned by a U.S. citizen or U.S. citizen trust and demise chartered to a "documentation citizen" (*i.e.*, someone eligible to document the vessel under 46 U.S.C. §§ 12101-12152), it is owned and operated by a defense contractor, or it is owned by a documentation citizen and demise chartered to a U.S. citizen. 46 U.S.C. §§ 53102(b)–(c).

Matson raises a second argument in response to the Court's opinion in *Matson II*. It criticizes the Court's conclusion that, because "§ 50501 . . . merely sets forth the requirements for being 'deemed to be' a 'citizen of the United States' for purposes of the merchant marines[,] . . . the Hobbs Act's reference to rules or orders issued 'pursuant to § 50501' can have meaning only if agency action taken 'pursuant to § 50501' includes rules or orders that do not 'direct,' 'authorize,' or 'approve[]' some action that is compelled or authorized by § 50501 itself." *Matson II*, 466 F. Supp. 3d at 189 (first quoting 46 U.S.C. § 50501; then quoting *NAM*, 138 S. Ct. at 630). Specifically, Matson responds by pointing to three examples of regulations issued by MARAD that specifically implement the citizenship requirement of § 50501. *See* Dkt. 18 at 25 (citing Maritime Security Program, 70 Fed. Reg. 55,581, 55,582–84 (Sept. 22, 2005); Shipping—Technical Amendments, 69 Fed. Reg. 34,309, 34,310 (June 21, 2004); and Citizenship Standards for Vessel Ownership and Financing, 65 Fed. Reg. 76,572, 76,572–73

(Dec. 7, 2000)).  It argues that these regulations were issued "pursuant to" 46 U.S.C. § 50501, and therefore the Court was wrong to suggest that an absence of Hobbs Act jurisdiction in this case would "render Section 2342's reference to Section 50501 superfluous."  Dkt. 18 at 25.

Matson's argument is unpersuasive.  In pointing to regulations that the Secretary of Transportation has issued in the past that invoke § 50501, Matson ignores a critical fact: § 50501 did not "direct," "authorize," "approve[]" these regulations either.  Indeed, § 50501 does direct, authorize, or approve *any* action by the Secretary of Transportation; all it does is state the requirements necessary for a vessel owner to be deemed a citizen of the United States, *see* 46 U.S.C. § 50501(a), which, at least at times, is necessary for the vessel to qualify for inclusion in the MSP, *id.* § 53102(c).  In the face of this reality, the Court sees no reason to depart from its conclusion in *Matson II* that the only interpretation of "pursuant to § 50501" that gives meaning to that term is if agency action taken "pursuant to § 50501" includes rules or orders that are not directed, authorized, or approved by § 50501 itself but, rather, are simply consistent with that detailed regulation.  466 F. Supp. 3d at 189.

Finally, Matson also contends that the Court drew an incorrect distinction in *Matson II* between orders that *explicitly* invoke § 50501 and orders that *implicitly* invoke § 50501, because an agency's explicit invocation of a statute "has no legal significance" for the purpose of determining jurisdiction. Dkt. 18 at 27–28.  The problem with this argument, however, is that it is incompatible with the D.C. Circuit's reasoning in *Matson I*.  There, the court of appeals placed significant weight on precisely the same distinction that Matson would have this Court reject: in concluding that it lacked Hobbs Act jurisdiction to review the 2016 Approval Order approving the APL Saipan, the D.C. Circuit relied on the fact that "MARAD never *explicitly invoked* section 50501 in reaching its eligibility determination in 2016." *Matson I*, 895 F.3d at 805

(emphasis added). At the same time, however, the court *contrasted* the 2016 Approval Order with the 2015 Approval Order, over which the court surmised it likely could have jurisdiction, based on the order's "'explicit reliance' on section 50501." *Id.* at 804 (quoting *IBT*, 17 F.3d at 1482). To the extent that Matson finds fault in the explicit-versus-implicit distinction, therefore, it must take that issue up with the D.C. Circuit.

In sum, Matson has not provided the Court with a reason to revisit its conclusion in *Matson II* that the Hobbs Act vests jurisdiction in the courts of appeals to review orders that explicitly rely on § 50501, and thus the Court reaffirms that holding here.

That conclusion alone does not end matters, however, because it still leaves open the question whether the district courts may exercise concurrent jurisdiction over the aspects of the 2021 Approval Order that do not rely on § 50501. In *Matson II*, this Court concluded that the "courts of appeals have exclusive jurisdiction to review the entirety of this type of multiple-authority order" and, accordingly, held that the Court lacked jurisdiction to review MARAD's 2015 Approval Order authorizing the substitution of the APL Guam. 466 F. Supp. 3d at 190. In its opposition brief, Matson urges the Court to revisit that conclusion. However, it merely rehashes the same arguments that the Court considered and rejected in *Matson II*, and, thus, the Court sees no reason to depart from its prior holding.

Putting this all together, the Court concludes for the reasons set forth more fully in *Matson II*, 466 F. Supp. 3d 177, that it lacks jurisdiction to consider Matson's challenge to MARAD's 2021 Approval Order authorizing the substitution of the Herodote for the APL Guam. The Court, accordingly, will grant Defendants' motions to dismiss.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motions to dismiss.

Dkt. 15; Dkt. 17.

      A separate order will issue.

/s/ Randolph D. Moss  
RANDOLPH D. MOSS  
United States District Judge

Date: August 4, 2022